AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 21-MR-1251
ONE SAMSUNG GALAXY S8+ WIRELESS )
TELEPHONE (FURTHER DESCRIBED IN )
ATTACHMENT A) )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference).

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| See attached Affidavit | See attached Affidavit |

The application is based on these facts:
Please see the attached affidavit of ATF Special Agent Brenton Hutson, which is incorporated by reference and has been reviewed and approved by AUSA Jaymie Roybal.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brenton Hutson, ATF Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephonically sworn and electronically signed___ *(specify reliable electronic means)*.

Date: August 27, 2021

*Judge's signature*

City and state: Albuquerque, New Mexico    Honorable Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

In the Matter of the Search of:

ONE SAMSUNG GALAXY S8+
WIRELESS TELEPHONE (FURTHER
DESCRIBED IN ATTACHMENT A)

Case No. _____

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Brenton Hutson, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed since January 2020. I am a United States Marine Corps Veteran, to include one combat deployment, and am also a graduate of the University of Colorado, holding a Bachelor's Degree in Nonprofit Management and a Master's Degree in Public Administration. I previously worked in the field of human services for approximately seven years, managing programs designed to assist individuals struggling with homelessness, severe mental illness, and substance use disorders. I have also attended and graduated from the Federal Law Enforcement Training Center and the ATF National Academy.

2. I have training and experience investigating violations of Federal law. As a result of my training and experience as an ATF Special Agent, I am familiar with the Federal criminal laws and know that it is a violation of:

   a. Title 18, United States Code, Section 554: Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.

   b. Title 18, United States Code, Section 922(o): Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

3. Based upon my training and experience, I am familiar with definitions of various types of firearms, and know that Title 18, United States Code, Section 921(a)(23) indicates the term "machinegun" has the meaning given such term in section 5845(b) of the National Firearms Act (26 U.S.C. 5845(b)). Title 26, United States Code, Section 5845(b) defines a machinegun as any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more

1

than one shot, without manual reloading, by a single function of the trigger. The term also includes the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

4. I am familiar with the information contained in this Affidavit based upon the investigation that I have conducted, on my conversations with other law enforcement officers or industry operations investigators who have engaged in various aspects of this investigation and based upon my review of reports written by other law enforcement officers involved in this investigation. Because this Affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are relevant to determination of probable cause to support the issuance of the requested warrant. When the statements of others are set forth in this Affidavit, they are set forth in substance and in part.

5. Based on my training and experience and the facts set forth in this Affidavit, there is probable cause to believe that Genaro RAMOS has committed violations of Title 18, United States Code, Section 554 – that being fraudulently or knowingly exporting or sending from the United States, or attempting to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receiving, concealing, buying, selling, or in any manner facilitating the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States; and Title 18, United States Code, Section 922(o) – that being, possessing a machinegun – and that evidence of such violations will be located in the cellular phone possessed by RAMOS at the time of his arrest and seized by ATF incident to his arrest.

## PURPOSE OF AFFIDAVIT

6. I make this Affidavit in support of an application for a search warrant for authorization to search the SUBJECT DEVICE further described in ATTACHMENT A belonging to Genaro RAMOS for evidence of violations of:

   a. Title 18, United States Code, Section 554: Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.

   b. Title 18, United States Code, Section 922(o): Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

7. The SUBJECT DEVICE is further described as Samsung Galaxy S8+ recovered from RAMOS' person at the time of his arrest on August 24, 2021. I seek authorization to search the SUBJECT

2

DEVICE for the items described in ATTACHMENT B which is incorporated throughout by reference. The SUBJECT DEVICE is in ATF's possession and has been since RAMOS' arrest on August 24, 2021.

8. Based on my training and experience, and that of other more experienced law enforcement officers, and the facts set forth in this Affidavit, there is probable cause to believe that the above-listed violations have been committed by RAMOS. There is also probable cause to search the information described in ATTACHMENT A for evidence of those crimes as described in ATTACHMENT B.

## SUMMARY OF PROBABLE CAUSE

### Receipt of Relevant Information

9. On August 2, 2021, I received information from a witness whose identity is known to me, and who I will refer to hereafter as Confidential Source (CS). CS recalled he/she had been approached by an individual whose true identity was unknown to him/her at the time, and who was later identified as Genaro RAMOS. CS was introduced to this individual through a common associate. RAMOS asked CS to build approximately two hundred (200) Glock-type firearms, offering approximately $700 per firearm, and specifically indicated he did not want a "paper trail" and that the firearms should be non-serialized. RAMOS reportedly relayed to CS that he travels to Mexico once per week to transport firearms, and that he takes approximately one hundred (100) firearms with him on each trip.

10. On August 5, 2021, I was contacted by CS. CS relayed that a common associate had provided him/her with RAMOS's phone number. CS also provided me with a photograph of a Facebook profile he/she indicated belonged to RAMOS, having been so identified by CS reviewing pictures contained within the profile. I later showed CS a photograph of RAMOS, and CS confirmed it was the same individual.

### Undercover Contact with RAMOS

11. On August 6, 2021, an ATF Undercover Agent (UC1), was briefed as to the investigation of RAMOS, who was identified as a suspected firearms trafficker in the Albuquerque metropolitan area. On the same date, UC1 attempted to arrange a meeting with RAMOS via a recorded telephone conversation.

12. On the same date, at approximately 10:29 AM, UC1 spoke to RAMOS. The following is a summary and not a verbatim transcription of the recorded telephonic conversation in Spanish. RAMOS advised that he was looking for a "connection," and asked UC1 if he/she had a store or a pawn shop. Based upon the context of this conversation it was understood by UC1 that this request for a "connection" referred to a source for firearms. UC1 advised RAMOS that he/she did not have a store but could get RAMOS whatever he wanted. RAMOS arranged to meet with UC1 in the afternoon.

3

13. RAMOS did not arrive at the meeting location; however, UC1 spoke to RAMOS via telephone at approximately 4:05 PM. The following is a summary and not a verbatim transcription of the recorded telephonic conversation in Spanish. RAMOS inquired about prices because he was possibly traveling to El Paso to meet his cousins. Based upon the context of the conversation that followed it was understood by UC1 that this request referred to prices for firearms. UC1 advised RAMOS that he/she had a supplier in Dallas and wanted to know what RAMOS needed. RAMOS indicated he wanted to know prices and what UC1 had on hand because he could bring money back from El Paso. RAMOS advised he was currently buying "cuerno de chivo" (UC1 understood this to refer to AK-type firearms) and "9mm" and was not buying anything else. UC1 asked RAMOS if he wanted to buy the firearms on paper or without, to which RAMOS advised that he was not interested in buying on paper. UC1 asked RAMOS if he wanted the firearms with a serial number, to which RAMOS indicated, "the serial number does not matter to me, with or without serial number does not matter because where they are going they are not coming back. Do you know what I mean?" UC1 asked RAMOS how he was paying to which RAMOS indicated that he was going to pay in cash. UC1, asked RAMOS what he was buying and how many he wanted. RAMOS indicated he was asked for and is able to sell "9mm", but was willing to buy "45," "380," or whatever was on hand. RAMOS advised that the quantity depended on the model of the firearm and was not interested in buying a "mix." RAMOS asked UC1, if he/she sold used or new, to which UC1 responded that he/she sold both new and used. RAMOS advised that he would buy from one (1) up to whatever quantity UC1 wanted to sell. RAMOS advised that he was buying "9mm" firearms from $450 to $500. UC1 advised RAMOS that he/she would get in contact with his/her contact in Dallas and would get in contact with RAMOS. RAMOS advised that he was most interested in knowing the price. No specific quantity of firearms was discussed at the time.

14. On August 13, 2021, at approximately 4:05 PM, UC1, spoke to RAMOS. The following is a summary and not a verbatim transcription of the recorded telephonic conversation. UC1 advised RAMOS that he/she had "merchandise" (meaning firearms) and had a mix of models. RAMOS advised that he was not interested and wanted to "pass."

15. On August 22, 2021, UC1 sent RAMOS a picture of two pistols and two AK-type firearms via text message. UC1 asked RAMOS if he was interested in purchasing each Glock for $400, the AK-type firearm for $800 and the AK-type "matraca" (street vernacular for fully automatic) firearm for $1200.

16. Approximately three minutes later, RAMOS asked UC1 if any of the firearms had magazines. UC1 advised RAMOS that he/she had the magazines. RAMOS wrote that he would pay $800 for the two (2) Glocks, $800 for the AK-type firearm and $1000 for the "matraca" (street vernacular for fully automatic). RAMOS followed up with another text message and asked if UC1 would take $2600 for everything. UC1 replied to RAMOS with "sounds good, let's do it."

17. RAMOS asked UC1 when he/she would return to Albuquerque. UC1 advised RAMOS that he/she was stopping in Flagstaff, AZ and would then head to Albuquerque. RAMOS indicated that

4

he was in Arkansas and would arrive in Albuquerque tomorrow evening (August 23, 2021) and would meet UC1 in the evening. On August 23, 2021, UC1 and RAMOS conversed via text message, agreeing to meet at 2:00 PM on August 24, 2021 to complete the transaction.

### Undercover Reversal and Arrest of RAMOS

18. On August 24, 2021, RAMOS and UC1 engaged in telephone and text message conversation identifying the meeting location for the transaction. RAMOS arrived alone at the meeting location at approximately 2:55 PM in a black, four-door sedan. UC1 was present at the location, as was another ATF undercover agent (UC2). The firearms that RAMOS had arranged to purchase from UC1 were contained within an unzipped duffel bag, which RAMOS opened during the below interaction.

19. The following is a summary and not a verbatim transcription of the recorded interaction, which occurred mostly in Spanish between RAMOS and UC1. During this interaction with RAMOS, UC1 identified one of the firearms in the bag as a fully automatic firearm (machinegun) as they had previously discussed. RAMOS acknowledged UC1's statements by appearing to indicate he was familiar with machineguns. UC2 pointed out some characteristics/modifications of the machinegun that made it fully automatic. RAMOS stated that he was going to load the firearms in the vehicle and transport them directly to Juarez (understood to be referring to Juarez, Mexico). When UC1 told RAMOS the firearms could not come back to UC1, and asked how RAMOS got the firearms to Mexico, RAMOS indicated he would purchase "absolutely everything", to include 'bazookas' and grenades.

20. RAMOS provided two thousand and six hundred ($2,600) dollars to UC1 in exchange for the firearms listed as follows:

| Make    | Model                              | Caliber | Serial Number |
|---------|------------------------------------|---------|---------------|
| Glock   | 22                                 | .40     | WHU916        |
| Glock   | 22                                 | .40     | BARP935       |
| Norinco | MAK-90                             | 7.62x39 | 17691         |
| Norinco | Type 56S Conversion (machinegun)   | 7.62x39 | 406541        |

21. I function tested the Norinco Type 56S 7.62x39 machinegun (SN: 406541) prior to and after the transaction. Based upon my training and experience the Norinco Type 56S 7.62x39 machinegun (SN: 406541) is a machinegun as defined, it being designed to shoot, automatically, more than one shot, without manual reloading, by a single function of the trigger.

22. RAMOS then took possession of the firearms by picking up the duffle bag that contained the firearms and took multiple steps back towards the vehicle he had arrived in, at which time the arrest was initiated. RAMOS was detained without incident and placed under arrest and his vehicle

was cleared. During a subsequent interview, RAMOS generally indicated the statements he made previously to UC1 and UC2 were lies.

23. Subsequent to RAMOS' arrest, I searched him incident to arrest and located the SUBJECT DEVICE in RAMOS' shorts' pocket. I then transported the SUBJECT DEVICE to the ATF Albuquerque Field Office and secured it pending a search warrant.

## EVIDENCE COMMONLY FOUND ON CELL PHONES AND COMPUTERS

### Evidence of Firearms Trafficking Frequently Found on Phones

24. Based upon my training and experience, and that of other more experienced law enforcement officers, I know that firearms traffickers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates and traveling to obtain or distribute firearms. The cellular telephones are used to call, text, or otherwise communicate with suppliers and customers regarding firearms transactions. As a result, evidence of firearms trafficking can often be found in text messages, call logs, photographs, videos, and other stored data on the cellular phone.

25. Based on my training and experience, and that of other more experienced law enforcement officers, the data maintained in a cellular telephone used by a firearms trafficker is evidence of a crime or crimes. This includes the following:

   a. The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

   b. The stored list of recent received, missed, and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a firearms trafficking investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a firearms transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is

evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his firearms-trafficking associates.

c. Stored text messages are important evidence, similar to stored numbers. Agents can identify both associates and friends of the user who likely have helpful information about the user, his location, and his activities.

d. Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the firearms trafficking organization. Digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

e. Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

## TECHNICAL TERMS

26. Based on my training and experience, and that of other more experienced law enforcement officers, I use the following technical terms to convey the following meanings:

f. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

27. Based on my knowledge, training, and experience, and that of other more experienced law enforcement officers, I know that cellular telephones, can store information referenced above for long periods of time. This information can sometimes be recovered with forensic tools.

7

28. *Forensic evidence.* As further described in ATTACHMENT B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICES were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICES because cellular telephones retain call logs, texts, and photographs in the memory of the cellular telephone. Similar to a computer or other digital device this information is retained in phone until it is written over.

29. *Manner of execution.* Because this warrant seeks only permission to examine one cellular telephone already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## DIGITAL DEVICES AS INSTRUMENTALITIES OF THE CRIMES

30. Based upon the evidence provided, it is reasonable to believe the SUBJECT DEVICE was utilized to further firearms trafficking by communications between RAMOS and subjects known and unknown. Because of the manner in which the device was used it is reasonable to believe the SUBJECT DEVICE was used as an instrumentality of the crimes under investigation.

31. Based upon my training and experience, and that of other law enforcement officers, trafficking firearms in the quantities RAMOS' claimed to would require logistical networks and infrastructure that would require substantive amounts of time to develop. Thus, this search will be limited to files, records, and information originating from January 1, 2021, to the present.

## SEARCH TECHNIQUES

32. Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit imaging or otherwise copying all data contained on the SUBJECT DEVICE and will specifically authorize a review of the media or information consistent with the warrant.

33. In accordance with the information in this affidavit, law enforcement personnel will execute the search of the SUBJECT DEVICE pursuant to this warrant as follows:

### Securing the Data

34. In order to examine the SUBJECT DEVICE in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of the SUBJECT DEVICE.[1]

---

[1] The purpose of using specially trained computer forensic examiners to conduct the imaging of digital devices or other electronic storage media is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures. When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties. Computer forensic examiners often work closely with investigative personnel to assist investigators in their search for digital evidence. Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not

35. Law enforcement will only create an image of data physically present on or within the SUBJECT DEVICE. Creating an image of the SUBJECT DEVICE will not result in access to any data physically located elsewhere. However, SUBJECT DEVICES that have previously connected to devices at other locations may contain data from those other locations.

### Searching the Forensic Images

36. Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant. The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit.

---

possess. Computer forensic examiners, however, often lack the factual and investigative expertise that an investigative agent may possess on any given case. Therefore, it is often important that computer forensic examiners and investigative personnel work closely together.

## CONCLUSION

Based on the foregoing, I respectfully submit that probable cause exists to search the SUBJECT DEVICE described in ATTACHMENT A, for evidence, fruits, and instrumentalities of Title 18, United States Code, Section 554 – that being fraudulently or knowingly exporting or sending from the United States, or attempting to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receiving, concealing, buying, selling, or in any manner facilitating the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States; and Title 18, United States Code, Section 922(o) – that being, possessing a machinegun, as described in ATTACHMENT B. This application was reviewed and approved by Assistant United States Attorney Jaymie Roybal.

Brenton Hutson, Special Agent
Bureau of Alcohol, Tobacco, and Firearms

Electronically submitted and telephonically sworn to before me, this 27th day of August, 2021

THE HONORABLE LAURA FASHING
United States Magistrate Judge

## ATTACHMENT A

### Places to Be Searched - Subject Devices

1. SUBJECT DEVICE: One (1) Samsung Galaxy S8+ (IMEI: 357759081370827) wireless telephone contained in a dark, semi-transparent case recovered from RAMOS' person at the time of his arrest on August 24, 2021. Currently in ATF custody.

## ATTACHMENT B

### Evidence to be Seized

1. All records on the SUBJECT DEVICE which constitute evidence, fruits, and instrumentalities of Title 18, United States Code, Section 554 – that being fraudulently or knowingly exporting or sending from the United States, or attempting to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receiving, concealing, buying, selling, or in any manner facilitating the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States; and Title 18, United States Code, Section 922(o) – that being, possessing a machinegun, to include:

    a. Information related to any firearm used during the course of the crimes listed above, including the identities of who owned, possessed, and used the firearms during the course of the crimes;
    b. Any communication with or among co-conspirators, suppliers, or customers related to the crimes listed above;
    c. Any information relating to the planned distribution or planned use of the proceeds of the crimes listed above;
    d. Any subscriber information or contact information to include, names, addresses, telephone numbers, email addresses or other identifiers;
    e. Any call log information, including missed, incoming and outgoing calls and any information associated with those numbers;
    f. Any photographs, video and audio files related to the crimes listed above;
    g. Any text messages, email messages, chats, multimedia messages, installed applications or other electronic communications related to the crimes listed above;
    h. Any documents, spreadsheets, calendar, note, password, dictionary or database entries related to the crimes listed above;
    i. Any business records, to include ledgers, receipts, invoices, shipping documents, inventories, customer lists, bank account information, accounting or business software, customer communications, email communications, website or Social Media sites used for the business, and other business records and information reasonably related to the operation of an illicit business related to the crimes above.
    j. Any internet or browser entries or history;
    k. Any system data or configuration information contained within the device

2. Any other user or system files and data, contained on the subject device itself or an attached peripheral device such as a sim card or micro SD card, which would constitute evidence of violations described above.

3. Evidence of user attribution showing who used or owned the SUBJECT DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history; As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

12

any form of computer or electronic storage (such as flash memory or other media that can store data) any photographic or video format, and any content within smartphone applications such as WhatsApp, Snapchat, Marco Polo, Facebook and others that are stored on the devices.

4. Based upon my training and experience, and that of other law enforcement officers, trafficking firearms in the quantities RAMOS' claimed to would require logistical networks and infrastructure that would require substantive amounts of time to develop. Thus, this search will be limited to files, records, and information originating from January 1, 2021, to August 26, 2021.